UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA

    -against-                                            00-cr-92 (KMW)

MICHAEL BRUMER,                             OPINION & ORDER

            Defendant.
------------------------------------X
Wood, U.S.D.J.:

    Defendant Michael Brumer ("Brumer") moves for return of some or all of the $250,000 in attorneys' fees he paid to his former counsel, Joseph Tacopina ("Tacopina").[1] Brumer paid Tacopina a flat fee of $250,000[2] to defend Brumer in the above-captioned criminal matter. Brumer terminated Tacopina on May 14, 2004, over two years after he retained him.

    Brumer argues (1) that he terminated Tacopina for cause, and thus that Brumer is entitled to a full refund of the entire fee he paid to Tacopina, or (2) that if the Court

---

[1] The Court hears this motion under its ancillary jurisdiction over a fee dispute arising out of a criminal case. See Fermin v. Moriarty, 2003 U.S. Dist. LEXIS 13367, at *18-20 (S.D.N.Y. Aug. 4, 2003)(finding that a federal court may exercise ancillary jurisdiction over a fee dispute between a criminal defendant and his attorney).

[2] Brumer paid $50,000 to Tacopina on February 13, 2002, the day they signed a retainer agreement. (Tacopina Aff. Ex. A at 1.) The retainer agreement provided that Tacopina would receive the remaining balance of $200,000 by perfecting a lien against Brumer's house in Sands Point, New York. (Id.) Some time after February 2002, Brumer sold the Sands Point house for $2.4 million; $200,000 of the proceeds of the sale went to Tacopina. (Tr. 185-86).

finds that Tacopina was not terminated for cause, the Court should apply quantum meruit, and require Tacopina to refund half of the fee.³ The Court denies Brumer's motion, for the reasons stated below.

The Court conducted an evidentiary hearing on Brumer's motion on April 1, April 4, April 28, April 29, and May 18, 2005. Both Tacopina and Brumer testified at the hearing. The Court also heard testimony from Chad Seigel, Tacopina's law associate; Lawrence Kobak, a podiatrist and attorney whom Brumer sought to use as an expert witness for his criminal case; Lawrence Klein, Brumer's co-defendant and former partner; Marty Teller, a former employee of Brumer; Henry Mazurek, Sarita Kedia, and Leslie Dubois, all current or former attorneys with the Shargel firm, which represented Lawrence Klein; and Sabrina Brumer, Brumer's daughter. On every point where Brumer, on the one hand, and Tacopina, Siegel, Mazurek, Kedia and Dubois, on the other hand, testified in conflict with one another, the Court finds the testimony of Tacopina, Siegel, Mazurek, Kedia and Dubois credible, and the testimony of Brumer incredible.

---

³ Brumer also asserts that the retainer agreement signed by Brumer and Tacopina was an impermissibly non-refundable agreement. The Court ruled from the bench that the agreement between Brumer and

The Court makes its credibility determination based on the demeanor of Brumer; the demeanor of Brumer's former attorneys Tacopina and Siegel; the demeanor of Klein's former attorneys Mazurek, Kedia and Dubois; and based on the inconsistencies and falsehoods in Brumer's testimony, most notably:

1. Brumer himself now claims that he testified falsely under oath earlier in this case, on April 3, 2002, during his guilty plea allocution. (Tr. 105) Brumer testified on April 1 and April 4, 2005, that he is factually innocent of the crimes charged in this case (Tr. 128), notwithstanding his allocution to guilt on April 3, 2002, which was made pursuant to an April 2, 2002 written plea agreement. Brumer's claim that his plea allocution was completely false is belied by his unscripted admission to criminal conduct at the plea allocution (April 3, 2002 Tr. at 24), which Brumer now claims to have "made up" on the spot. (Tr. 213-14.)

2. In preparation for the hearing on Brumer's motion, the Court ordered Brumer to submit an affidavit in support

---

Tacopina was not nonrefundable (Tr. 9-11.) Brumer asks the Court to reconsider its holding on the basis of a retainer agreement between another defendant in this case with his lawyer. Brumer's request is denied.

of any factual allegations made against Tacopina. Brumer swore in his March 31, 2005 affidavit that he had read all of his submissions regarding this motion and that they were true (Brumer Aff. ¶ 2), but the next day he testified that he had not read the submissions described in his affidavit, and that he could not attest to their truth. (Tr. 127, 151-52.)

3. Although Brumer contended that he terminated Tacopina for refusing to prepare for a *Fatico* hearing (Brumer Aff. ¶ 5), Brumer later admitted that Tacopina never refused to prepare for a *Fatico* hearing. (Tr. 120.)

4. Brumer admitted at the hearing on this motion that he had falsely sworn, in his July 23, 2001 financial affidavit, that he had fewer assets than he had in fact. Brumer admitted at the hearing on this motion that he had omitted, from his sworn statement of assets, that as of July 23, 2001, he owned a house, through a pension fund that was solely under his control, which house he later sold for $2.4 million. (Tr. 185-86). He admitted that he omitted that asset in order to obtain free representation (at a time when he expected to plead guilty rather than try the case). (Tr. 185-87.) Brumer

explains the omission from his financial affidavit by stating that, at the time he swore to the truthfulness of the statements in his financial affidavit, he had no "liquid cash." (Tr. 186.) When Brumer later decided to go to trial, he used those undisclosed assets to retain a private attorney (Mr. Tacopina); Brumer paid Tacopina $200,000 from the proceeds of the sale of that house. (Tr. 187.)

## I. Termination for Cause

Brumer claims that he terminated Tacopina for cause because Tacopina failed to properly investigate possible defenses, and because Tacopina failed, later, to prepare properly for a *Fatico* hearing.

If Brumer terminated Tacopina for cause, Brumer would be entitled to a full refund of the fees paid to Tacopina, notwithstanding his retainer agreement with Tacopina. See Garcia v. Teitler, 2004 U.S. Dist LEXIS 13854, at *16. New York courts have not explicitly defined "cause," but the case law indicates that it would include misconduct,

unreasonable laxness in pursuing the client's case, or other improper handling the case. Id. at *16-17.

a. Failure to properly prepare the case

Brumer contends that he plead guilty because he was "scared" to go to trial because Tacopina was not prepared for trial. (Tr. 75.) Brumer cites as his principal evidence of Tacopina's lack of preparedness for trial (1) Tacopina's alleged failure to prepare the appropriate expert witnesses (Tr. 71-74); Tacopina's alleged failure to investigate properly the provable loss amount (Tr. 288-90); and (3) Tacopina's lack of contribution to other defense work. (See Tr. 71.) Brumer claims that, as a consequence, he was forced to plead guilty, and was forced to agree to a loss amount of $10-20 million.

The Court finds that Tacopina was very well prepared to go to trial. Tacopina testified, credibly, that he had been actively preparing for trial until the eve of trial. In his testimony, he displayed a detailed and nuanced understanding of the case, including the strengths and weaknesses of each possible strategy. When it was appropriate to consult with

Dr. Klein's lawyers, he did so; in that process he and each attorney from the Shargel firm was able to take advantage of one another's meticulous preparation and excellent judgment.

Brumer's contention that Tacopina failed to contact appropriate expert witnesses is baseless. One expert witness suggested by Brumer, Lawrence Kobak ("Kobak") was interviewed by Tacopina because Brumer claimed that Kobak would testify that Brumer's and Klein's use of Medicare billing codes was not fraudulent. (Tr. 72-73.) As Kobak testified at the hearing on this motion, that would not have been his testimony; he testified that his analysis of a sample of Brumer's charts would not have been exculpatory on the issue of Brumer's Medicare fraud. (Tr. 333; <u>see also</u> Tr. 777, 779-80 (explaining Tacopina's and Mazurek's rationale for not retaining Kobak as an expert witness for the defense).) The other experts whom Brumer claims should have been contacted and/or retained would have testified, according to Brumer, that Medicare was wrong in deciding which procedures are reimbursable. That testimony would have been irrelevant, and thus inadmissible. Tacopina followed sound legal strategy in deciding not to use Kobak

as an expert witness, and in deciding not to contact the other experts proposed by Brumer.

Brumer's contention that Tacopina failed to investigate properly the provable loss amount is also baseless. The Court finds credible Mazurek's testimony that up until Brumer decided to plead guilty (shortly after seeing the 3500 material), the joint defense focus was on defending each and every act and practice that the government alleged to be fraudulent. When Brumer and Klein told their lawyers to stop preparing a trial defense, and to begin negotiating a plea agreement, the lawyers had not yet made their own assessments of the provable loss amounts. Brumer had, by then, made his own assessment of provable losses; he told Tacopina, at the time that Tacopina was negotiating a plea agreement for Brumer, that the government could prove more than $30 million in losses. (Tr. 804-5.) Brumer admits that he never provided anything to Tacopina that would contradict the loss amount to which he plead guilty, which is $10-20 million. (Tr. 313.)

The Court finds that Tacopina was justified in relying on Brumer's representations concerning the provable loss amount, and finds that, given Brumer's representations,

there was no reason for Tacopina to attempt to calculate a different loss amount.  Such a calculation would have taken many months (either to calculate the loss amount for each patient visit, or to formulate other ways of calculating loss, such as using sampling), and there was no reason to believe that Brumer would benefit from such a calculation.

Brumer also contends that Tacopina performed relatively little other work on the case, and that the Shargel firm actually performed a substantial portion of the work for which Tacopina billed Brumer.  Brumer supports this contention by the facts that (1) Tacopina made no motions in the case (Tr. 6); (2) the joint defense memorandum on which Tacopina worked was "based on a memorandum written by the defendants themselves," (Letter from Schacht to the Court of 5/24/05, at 3), and was based as well on work done by the Shargel firm before Tacopina was hired by Brumer (Tr. 71, 110); (3) that the jury charge and questionnaire were largely "boiler-plate," (Letter from Schacht to the Court of 5/24/05, at 3); and (4) that Tacopina's statement that he and Brumer drafted the plea allocution was contradicted by Mazurek (an attorney for Klein), who allegedly testified

that he himself drafted the plea allocution.  The Court addresses these contentions in turn.

The fact that Tacopina filed no motions is not probative of lack of work in general.  The Court finds that Tacopina spent a substantial amount of time on the defense memorandum, based on Tacopina's credible testimony to that effect.  (Tr. 6-8.)  The Court notes that the Shargel firm spent substantial time preparing Klein's defense, that Tacopina recognized the high quality of the Shargel firm's work on the case, and that Tacopina coordinated his work with the Shargel firm's work, reasonably and efficiently.  (Id.)  The fact that the Shargel firm spent a large amount of time on the defense memorandum does not negate the fact that Tacopina also spent a substantial amount of time working on it.  Brumer's contentions that the jury charge and questionnaire were "boiler plate" and that Tacopina did not work on the allocution are meritless.  Last, Brumer's contention that Mazurek and Tacopina gave contradictory testimony as to who drafted Brumer's plea allocution is also without merit; Mazurek testified that he wrote the first draft of the plea allocution, which was then shared with and edited by Tacopina.  (Tr. 821-22.)  Mazurek's testimony with

respect to work on the plea allocution is consistent with Tacopina's testimony that he prepared the plea allocution statement together with Brumer, Klein, and Klein's lawyers (including Mazurek). (Tr. 66-67.)

### b. *Fatico* Hearing

Tacopina testified that he advised Brumer against seeking a *Fatico* hearing, because Brumer planned to present false testimony at the hearing, which would have hurt Brumer at sentencing. (Tr. 21-23.) Brumer intended to assert his complete innocence, which would have directly contradicted his guilty plea allocution (Tr. 24), and would have contradicted admissions of guilt made by Brumer to Tacopina. (Tr. 24-25.) Brumer concedes that Tacopina warned Brumer at the time that seeking a *Fatico* hearing could result in an increased sentence, because Brumer would lose the credit for acceptance of responsibility, and could face enhancements for obstruction of justice, perjury, and having harmed vulnerable victims. (Tr. 215-16). Brumer claims, however, that he is innocent of the crimes to which he plead guilty (Tr. 128), and that he would not have presented false testimony at a *Fatico* hearing. (Tr. 107.)

The Court finds that Tacopina did not, as stated by Brumer, "essentially refuse" (Brumer Aff. ¶ 5) to represent Brumer at a *Fatico* hearing. The Court finds that Tacopina's advice to Brumer that he forego a *Fatico* hearing was sound legal advice, because the Court finds credible Tacopina's assertion that Brumer intended to commit perjury at the *Fatico* hearing by denying all guilt. Brumer's other complaints about Tacopina's *Fatico* preparation are meritless.

In conclusion, the Court finds that Tacopina's handling of the case was proper, and involved no misconduct. See Garcia, 2004 U.S. Dist LEXIS 13854, at *16. In fact, Tacopina, along with his associate Chad Seigel, exercised a high level of skill and judgment in representing Brumer over the course of two years, and they spent their time very efficiently. The Court holds that Tacopina was not terminated for cause.

## II. Quantum Meruit

Brumer paid Tacopina a $250,000 retainer, which was agreed upon at a time when Tacopina and Brumer expected the case to go to trial. Brumer contends that Tacopina performed less work than Brumer and Tacopina contemplated, and that Tacopina owes Brumer a partial refund of the fee, based on a theory of quantum meruit.

The factors a court considers in making a quantum meruit determination of the reasonableness of attorneys' fees include: (1) the difficulty of the questions involved; (2) the skill required to handle the problem; (3) the time and labor required; (4) the lawyer's experience, ability and reputation; and (5) the customary fee charged by the Bar for similar services. See Mar Oil, S.A. v. Morrissey, 982 F.2d 830, 841 (2d Cir. 1993).

The first consideration in a quantum meruit determination, the difficulty of the questions involved, has already been discussed, supra, in determining that Tacopina was not terminated for cause. Brumer's case was very difficult; it involved several defendants accused of a multi-faceted scheme of defrauding the government out of tens of millions of dollars over several years. Brumer was

charged as one of the masterminds and ringleaders of the entire scheme, which was implemented throughout New York City at Brumer's and Klein's various podiatry clinics.

The second consideration in a quantum meruit analysis, the skill required to handle a case of this nature, is directly connected to the first, the difficulty of the questions involved. The Court finds that a very high level of skill was required to properly understand the various elements of the government's claims against Brumer and to properly defend against each of those claims, whether in plea negotiations or at trial.

The third consideration in a quantum meruit determination is the time and labor required. Tacopina and his associate, Chad Seigel, kept contemporaneous time records, which the Court has reviewed. (Tacopina Aff. Ex. E.) These records show a total of 806 hours billed to Brumer's case. In order to determine the reasonable amount of time and labor required in representing him, Brumer asks the Court to compare Tacopina's billing records to the records of Criminal Justice Act lawyers who represented co-defendants at trial, as well as co-defendant Klein's retainer agreement with Gustave Newman. Lawyers can

legitimately spend different amounts of time defending different clients. It would thus not be helpful to consider other lawyers' time-sheets. Much more useful to the Court are the appropriately detailed time-sheets kept by Tacopina and others at his firm,[4] and the testimony of Tacopina and Seigel at the hearing on this motion, which reflected an in-depth knowledge of the relevant facts and law, and excellent judgment concerning the best lines of defense.

The Court finds no non-trivial discrepancy between Tacopina's billing records and any of the testimony, and finds the time billed by Tacopina and Seigel to be reasonable. The Court notes that Tacopina's representation of Brumer spanned more than two years, and finds that 806 hours is a reasonable amount of time spent in preparing for the complex trial, as well as the subsequent plea

---

[4] Brumer points out that the billing records of Tacopina and the records of co-defendant Klein's former counsel Gerald Shargel do not show the same dates for joint defense counsel meetings. (Tr. 79-80.) Tacopina responds that his records are more likely to be accurate, because they are contemporaneous records, whereas the records of Shargel and his associates were reconstructed in preparation for this motion on attorneys' fees. (Tr. 79-80.)

Brumer points out that Tacopina's records appear to be inaccurate with respect to four days in March 2002. He notes that Tacopina took a four-day business trip to Italy sometime in March 2002, but that Tacopina's March 2002 time-sheets show no four-day period when Tacopina was not in meetings in New York. Brumer asks the Court to order Tacopina to show his passport to Brumer and the Court. Tacopina testified that he was in Italy for three or four days during the first couple weeks of his representation of Brumer. (Tr. 1060.) The Court does not need to see Tacopina's passport, because all of Tacopina's other record keeping and testimony is well-detailed and credible, which renders this alleged discrepancy inconsequential.

negotiations, meetings with Brumer in which Brumer sought a *Fatico* hearing, and preparations for sentencing.

The fourth consideration in a quantum meruit determination is the lawyer's experience, ability and reputation.  The Court finds that Tacopina possesses the experience and the ability required to manage a complicated criminal defense such as Dr. Brumer's; the Court, in making this finding, relies in part upon its own favorable impression of Tacopina's conduct as a lawyer and his fourteen years of criminal law experience, more than ten of those years as a private practitioner.  (See Tr. 1041-42.)  The Court also notes that Tacopina is an adjunct professor at Fordham and Cardozo Law Schools, where he teaches courses in advanced trial advocacy.  (Tr. 1042-43.)  With regard to Tacopina's reputation, the Court notes that Tacopina's trial skills have been favorably reviewed in industry publications.  (Tr. 1043-44).  Seigel, although less experienced than Tacopina, is very well-qualified for the work he performed, and performed that work very well.

The fifth and final consideration in a quantum meruit determination is the customary fee charged by members of the Bar for similar services.  Tacopina's hourly rate is $550;

Chad Seigel's hourly rate is $350. The Court finds Tacopina's and Seigel's hourly rates to be reasonable rates for private, criminal defense attorneys of comparable skill, defending complex cases, in the Southern District of New York. At these hourly rates, the reasonable charge for Brumer's legal defense is $349,150, which is almost $100,000 in excess of the fee Brumer was charged.

The Court finds that in light of the difficulty of the questions involved in Brumer's defense; the skill and time required to handle it; the lawyers' experience, ability and reputation; and the customary fee charged by the Bar for similar services; that Brumer is entitled to no refund of the attorneys' fees he paid to Tacopina.

## Conclusion

Brumer's motion for return of attorneys' fees is hereby denied.

SO ORDERED.

Dated: New York, New York
August 15, 2005

Kimba M. Wood
United States District Judge